UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR AN ORDER UNDER 18 U.S.C. § 2703(D) | Crim. No. 18-MJ-7108-JCB<br><br>UNDER SEAL |

**APPLICATION**

The United States of America Kenneth G. Shine, Assistant United States Attorney, appearing) asks this Court for an order pursuant to 18 U.S.C. §§ 2703(c)(1), (c)(2) and (d) directing T-MOBILE, a provider of electronic communication services, to disclose the information described in Attachment A ("the Requested Information"), for the period between December 11, 2017 and January 24, 2018, for the T-MOBILE mobile phone account assigned telephone number (781 )469-3244. The phone's subscriber is Eric Bargoot ("Bargoot") of Lynn, Massachusetts, and it is believed to be used by Bargoot and others unknown ("the Target Telephone").

**LEGAL STANDARDS**

The procedure by which the United States may obtain historical cell-site information ("HCSI") for a cell phone account is set forth in 18 U.S.C. § 2703(c)(1). That section states that "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or

customer of such service (not including the contents of communications) only when the governmental entity – . . . obtains a court order for such disclosure under subsection (d) of this section." 18 U.S.C. § 2703(c)(1). These records can include not only subscriber information as enumerated in § 2703(c)(2) but also any additional records that do not include the content of communications, pursuant to 18 U.S.C. § 2703(c)(1), including HCSI.[1]

The government's burden of proof is set forth in 18 U.S.C. § 2703(d): "A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers *specific and articulable facts* showing that there are *reasonable*

---

[1] See In re Application of United States, 849 F. Supp. 2d 177 (D. Mass. 2012) (Collings, M.J.) ("Until either the First Circuit Court of Appeals or the Supreme Court rule otherwise, or Congress enacts legislation dealing with the problem, the Court will follow the ruling of Judge Stearns in the case of In re Applications of the United States of America for Orders Pursuant to Title 18, United States Code, Section 2703(d), [509 F. Supp. 2d 76 (D. Mass.2007)], and not require a showing of probable cause before issuing an Order pursuant to § 2703(d) authorizing the acquisition of records containing historical cell site information"). See also United States v. Graham, 824 F.3d 421, 428 (4th Cir. 2016) (en banc) ("individuals do not have a reasonable expectation of privacy in historical CSLI records that the government obtains from cell phone service providers through a § 2703(d) order."); United States v. Carpenter, 819 F.3d 880, 887-89 (same) cert. granted, No. 16-402, 2017 WL 2407484 (U.S. June 5, 2017); United States v. Davis, 785 F.3d 498 (11th Cir. 2015) (en banc) (same), cert. denied, 136 S. Ct. 479 (2015); In re Application of U.S. for Historical Cell Site Data, 724 F.3d 600 (5th Cir. 2013) (same).

*grounds* to believe that . . . the records or other information sought, are *relevant and material* to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added).

This Application also seeks an order under 18 U.S.C. § 2705(b) precluding T-MOBILE from notifying the subscriber to the Target Telephone or anyone else of the order or any production in response to the order for a period of one year from the date of the Court's order.

## SPECIFIC AND ARTICULABLE FACTS

I am an attorney for the government as defined in Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure and, therefore, pursuant to 18 U.S.C. § 2703(c), may apply for this order. The following information comes from my communications with the Federal Bureau of Investigation agents and other law enforcement personnel involved in the investigation.

1. Between December 11, 2017 and January 23, 2018, four banks in the Greater Boston area were robbed. After all of the robberies, the victim tellers described the robber as a thin white or Hispanic male, approximately 5'6 to 5'7 in height. During each robbery, the robber entered the bank carrying a black nylon backpack, brandished a weapon[2], threatened bank tellers, and ordered tellers

---

2 During the robbery on December 11, 2017, the robber brandished a box cutter. During the robberies on December 15, 2017, December 29, 2017, and January 23, 2018, the robber brandished a black revolver.

to give him the bank's money. In all of these robberies, the banks' interior surveillance cameras captured images of the robber that are consistent with the victim tellers' descriptions of his characteristics. Based upon the similarities of the manner and method of the robberies as well as the robber's physical description, the FBI opines that the same individual is responsible for these robberies.

2. On January 23, 2018, at approximately 7:47 p.m., a branch of the Eastern Bank in Saugus, Massachusetts was robbed. The robber entered the bank carrying a black nylon backpack, brandished a black revolver, threatened the tellers with the revolver, and demanded the bank's money. The teller gave the robber money from his/her drawer and then the robber exited the bank. The robber was described as a white male, approximately 5'6 in height. The tellers also noted that the robber was wearing a ski mask, sunglasses, a hooded gray and black jacket, dark pants, and white sneakers.

3. Following the robbery, a witness ("CW#1") approached law enforcement and stated that he/she had observed the robber exit the bank and head towards an automobile parked at a nearby Starbucks. CW#1 described the automobile as a white Toyota sedan. CW#1 stated that the Camry was backed into a parking spot with its nose out.

4. Law enforcement spoke to an employee at the Starbucks ("CW#2"). CW#2 stated that at approximately 7:30 p.m., he/she observed a white Toyota Camry ("the Camry") parked directly in front of the Starbucks in a handicap parking spot. CW#2 stated that the Camry remained parked for approximately 20 minutes before exiting the spot.

5. Law enforcement learned that this Starbucks was equipped with video surveillance cameras, which were operating and functioning on the date and time of the robbery. These cameras captured footage of the Camry pulling into the handicap parking spot and then exiting the spot approximately 20 minutes later. These cameras also captured footage of two individuals residing inside the Camry. It is clear from the footage that one of the individuals is holding a cell phone.

6. During the time the Camry was parked in front of the Starbucks, the cameras captured footage of the two individuals exiting the Camry. At some point later in time, one of the individuals is seen returning to and then entering the Camry. A short time thereafter, another individual is seen returning to and then entering the Camry. This second individual is observed carrying a black backpack and wearing clothing consistent with the clothing worn by the robber in the aforementioned robbery.

7. After both individuals are observed returning to the vehicle, the Camry exits the Starbucks' parking lot heading in an unknown

direction. The cameras captured footage of the Camry's rear license place before it left the spot.

8. Law enforcement then queried the Camry's plate and determined that the plate is registered to Brendan O'Connor ("O'Connor") of Wellesley, Massachusetts.

9. On October 14, 2017, the Wellesley Police Department's Emergency Communications Center received an emergency call for a drug overdose at O'Connor's home in Wellesley.

10. When paramedics arrived, they were directed by O'Connor to a bathroom on the second floor. In that bathroom, the paramedics encountered Bargoot who had apparently overdosed on heroin. The paramedics administered two full doses of "narcam" to Bargoot. The paramedics revived Bargoot and then transported him, Bargoot, to the Newton Wellesley Hospital for additional medical treatment.

11. Law enforcement have since queried Bargoot's criminal record and have determined that he is a white male and approximately 5'6 to 5'8 in height. Additionally, law enforcement have learned that Bargoot and O'Connor were inmates during the same period of time at MCI Shirley and that Bargoot listed O'Connor as his point of contact on various forms.

12. The FBI also believes that two or more individuals were involved in the planning and execution of the bank robberies. The FBI maintains that there is a reasonable belief that the individuals utilized cell phones during the course of these bank

robberies. The FBI believes that individuals engaging in these activities generally utilize cell phones to coordinate their actions, and to communicate with one another along with possible third parties. Historical cell tower log information for the periods specified in Attachment A may reveal location of Target Telephone during the aforementioned specified periods.

## ORDER SEALING THIS MATTER AND PRECLUDING NOTICE TO THE SUBSCRIBER

The United States further requests that, pursuant to the preclusion-of-notice provisions of 18 U.S.C. § 2705(b), the Court order T-MOBILE not to notify any person (including the subscriber to whom the materials relate) of the existence of this application or the Court's Order for a period of one year, or until notified by the government within thirty days of the conclusion of the investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b). Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation [or unduly delay a trial], including by [as applicable]: giving targets an opportunity to flee or continue flight from prosecution, destroy

or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b). Moreover, some of the evidence in this investigation is stored electronically. If alerted to the existence of the Order, the targets could destroy that evidence, including information saved to their personal computers, on other electronic media, or in social media accounts.

The United States finally requests that this application, the Court's orders, and all related Court paperwork be sealed until further order of the Court, except for a copy of the Court's Order to be served upon T-MOBILE.

I believe this information to be true and accurate based on my conversations with the law enforcement personnel who have conducted the investigation described above.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:  /s/Kenneth G. Shine
     KENNETH G. SHINE
     Assistant U.S. Attorney

DATE: January 30, 2018